# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEFFREY E. KAWCZYNSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 15 C 3099 |
| v. | ) |
| | ) |
| F.E. MORAN, INC., FIRE PROTECTION | ) |
| OF NORTHERN ILLINOIS, and F.E. | ) |
| MORAN, INC., FIRE PROTECTION, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On November 5, 2015, Plaintiff Jeffrey E. Kawczynski filed a Third Amended Complaint against Defendants F.E. Moran, Inc., Fire Protection of Northern Illinois ("FPN") and F.E. Moran Inc. Fire Protection ("Fire Protection") alleging employment discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Before the Court are Defendants' motions for summary judgment and Plaintiff's motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a) and Northern District of Illinois Local 56.1. For the following reasons, the Court grants Defendants' motions and denies Plaintiff's motion. [80, 83, 86.] The Court denies Defendants' motion to strike Plaintiff's expert as moot. [73.] The Court dismisses this lawsuit in its entirety.

## BACKGROUND

**I.     Northern District of Illinois Local Rule 56.1**

"The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination. It is the

litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). Local Rule 56.1(a) "requires the party moving for summary judgment to file and serve a 'statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.'" *Id.* at 218 (citation omitted). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Petty v. Chicago,* 754 F.3d 415, 420 (7th Cir. 2014) (citation omitted); *see also* L.R. 56.1(b)(3)(A). Local Rule 56.1(b)(3)(C) requires the non-moving party to file a separate statement of additional facts. *See Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015).

Local Rule 56.1 statements and responses should identify the relevant admissible evidence supporting the material facts – not make factual or legal arguments. *See Zimmerman v. Doran,* 807 F.3d 178, 180 (7th Cir. 2015). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Curtis*, 807 F.3d at 218 (quoting *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009)). The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere,* 791 F.3d 764, 767 (7th Cir. 2015).

Here, Plaintiff has failed to file a statement of facts under Local Rule 56.1(a) in support of his motion for summary judgment and further failed to respond to Defendants' Local Rule 56.1(a) statements as required under Local Rule 56.1(b)(3)(A). As such, Defendants' Rule

2

56.1(a) statements are deemed admitted. *See* L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Curtis*, 807 F.3d at 218-19 ("The non-moving party's failure to admit or deny facts as presented in the moving party's statement or to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving party as undisputed.").

Rather than follow Local Rule 56.1, Plaintiff has provided his own affidavit dated January 13, 2017 to rebut some of Defendants' Rule 56.1 statements in which he directly contradicts his July 26, 2016 deposition testimony, thereby violating the "sham affidavit" rule. *See Cook v. O'Neill,* 803 F.3d 296, 298 (7th Cir. 2015) ("A 'sham affidavit' is an affidavit that is inadmissible because it contradicts the affiant's previous testimony ... unless the earlier testimony was ambiguous, confusing, or the result of a memory lapse."). Under these circumstances, the Court will only consider Plaintiff's averments that are an amplification of his deposition testimony, but not statements that clearly contradict his earlier deposition testimony. *See id.*; *see also McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010) (sham affidavit rule "applies when the change is incredible and unexplained").

## II.    Relevant Facts

Plaintiff was born is 1962 and is currently 54 years old. (R. 88, FPN Rule 56.1 Stmt. Facts ¶ 1.) Fire Protection, which incorporated in June 1980, is an Illinois corporation headquartered in Champaign, Illinois. (*Id*. ¶ 2; R. 85, Fire Prot. Rule 56.1 Stmt. Facts ¶¶ 3, 4.) FPN was incorporated in October 2007 as an Illinois corporation headquartered in Northbrook, Illinois and is a separate corporation from Fire Protection. (FPN's Stmt. Facts ¶¶ 3, 4.) Fire

3

Protection employed Plaintiff from June 2007 until early January 2008 as a sprinkler fitter apprentice. (Fire Prot. Stmt. Facts ¶¶ 6, 8-11.) After January 4, 2008, Fire Protection did not direct Plaintiff's work, had no involvement in his day-to-day assignments, and had no authority to discipline, termination, or lay-off Plaintiff. (*Id*. ¶¶ 21, 22.) Instead, FPN employed Plaintiff as a sprinkler fitter apprentice starting in January 2008. (FPN's Stmt. Facts ¶ 9.) Plaintiff completed his apprenticeship in September 21, 2012, after which he became a journeyman sprinkler fitter for FPN. (*Id*. ¶ 8.) Plaintiff worked for FPN until April 2013. (*Id*. ¶ 10.)

A collective-bargaining agreement that existed between the National Fire Sprinkler Association and Sprinkler Fitters and Apprentices Local Union No. 281 (hereinafter "Local 281") governed the terms and conditions of Plaintiff's employment with FPN. (*Id*. ¶ 11.) Throughout his employment, Plaintiff worked on numerous job sites – some jobs lasted only a few days and others lasted a month or longer. (*Id*. ¶ 13.) During the relevant time period, FPN had three superintendents, namely, Rick Nelson, Scott Acred, and Jeff Smith, who had decision-making authority with regard to sprinkler fitters, including the authority to inform sprinkler fitters that they would be "sitting" for a period of time. (*Id*. ¶ 14.) On the other hand, job site foremen did not have the authority to make decisions regarding the terms and conditions of sprinkler fitters' employment and did not have the authority to inform a fitter that he would be sitting. (*Id*. ¶ 15.) "Sitting" is when work is unavailable due to the inconsistent nature of the sprinkler fitting industry. (*Id*. ¶¶ 13, 17.) It was not uncommon for Plaintiff, along with other sprinkler fitters, to "sit" for periods of time ranging from a day to several weeks when no work was available. (*Id*. ¶ 17.) At his deposition, Plaintiff testified that when he was on a "sit," he was still employed by Defendants. (*Id*. ¶ 18.) Plaintiff testified that the times he "sat" during his

4

employment had nothing to do with his age.  (*Id*. ¶ 19.)

Also at his deposition, Plaintiff testified that FPN did not lay him off and that when he left his employment in April 2013 he was on a "sit" due to the lack of work.  (*Id*. ¶¶ 44, 54, 55.) It is undisputed that Plaintiff did not contact Human Resources following his last day of work in April 2013, although he did contact his superintendents to inquire about more work.  (*Id*. ¶¶ 59, 60.)  Thereafter, certain FPN superintendents responded that work was slow and one superintendent informed Plaintiff on two occasions that he was "try to get something" for Plaintiff.  (*Id*. ¶¶ 60, 61.)  Although Plaintiff had some periods of "sitting" while employed at FPN, he felt that the April 2013 sit was different because the superintendents did not return his calls.  (*Id*. ¶ 63.)  In particular, Plaintiff testified that he had a feeling that "they were not giving me work because they were getting rid of me," although Plaintiff admitted that he had no evidence to support this "feeling."  (R. 89-1, Ex. A, Kawczynski Dep., at 230, 259.)  Moreover, even though Plaintiff maintains that the superintendents did not return his calls in April 2013, he testified that two of the superintendents replied to him via text messages when he asked for work.  (*Id*. ¶¶ 63, 71.)  There is also undisputed evidence that these superintendents left Plaintiff voice mails for work in July 2013, and that Plaintiff never returned their calls.  (*Id*. ¶¶ 72, 73.)  In the meantime, Plaintiff testified that around the time he filed his EEOC Charge in May 2013, he decided that he did not want to return to work for FPN because he believed FPN would start a "paper trail" and try to fire him.  (*Id*. ¶ 70.)

While at the union apprentice school, Plaintiff's co-workers called him nicknames such as "apprentisaurus" and other co-workers called him "old man" and "old Jeff" in 2008.  (*Id*. ¶¶ 29, 31.)  In addition, Plaintiff asserts that one of his co-workers wrote "apprentisaurus" on his

5

hardhat at work.  (*Id*. ¶ 35.)  Further, Plaintiff maintains that in June and July 2008 his foreman referred to him as "old man" or "apprentisaurus."  (*Id*. ¶ 34.)  Plaintiff also testified that he did not experience any name calling in 2009 and he contends that only one incident occurred in 2010.  (*Id*. ¶ 41.)  Once Plaintiff became a journeyman in 2012, he admits that people stopped calling him an apprentisaurus.  (*Id*. ¶ 25.)  Although Plaintiff maintains that he told his co-workers to stop calling him old man and apprentisaurus, Plaintiff testified that he did not report this "name calling" to Local 281 while he was an apprentice nor did he complain to anyone at FPN's Human Resources Department about the name calling despite the fact that he knew he could bring complaints about discrimination and harassment pursuant to FPN's anti-discrimination policies.  (*Id*. ¶¶ 6, 7, 26, 32; Ex. A, Kawczynski Dep., at 72, 158.)

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).  The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine

6

issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Life Plans, Inc. v. Security Life of Denver Ins. Co.,* 800 F.3d 343, 349 (7th Cir. 2015).

**ANALYSIS**

**I.     ADEA Claim**[1]

Plaintiff first alleges an age discrimination claim in violation of the ADEA, which prohibits employment discrimination against individuals who are 40 years of age or older. *See Formella v. Brennan,* 817 F.3d 503, 514 (7th Cir. 2016); 29 U.S.C. §§ 623(a), 631(a). As the Seventh Circuit recently explained, at summary judgment, the test in establishing an employment discrimination claim "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 762 (7th Cir. 2016). The *Ortiz* decision, however, did not change the burden shifting method under *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which "is a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508,* 846 F.3d 216, 224 (7th Cir. 2017). Nevertheless, the *McDonnell Douglas* framework is not the only device courts use to assess circumstantial evidence at summary judgment. *See David*, 846 F.3d at 224. Moreover, at summary judgment, a plaintiff must also

---

[1] Because the Court has previously discussed Defendants' timeliness and exhaustion arguments in its prior rulings [26, 35, 52], the Court addresses the merits of Plaintiff's ADEA claims in this Memorandum, Opinion and Order.

7

"show evidence that could support a jury verdict that age was a but-for cause of the employment action." *Roberts v. Columbia Coll. Chicago,* 821 F.3d 855, 865 (7th Cir. 2016).

The Court first turns to whether Plaintiff has presented sufficient evidence to create a genuine dispute of material fact for trial that he suffered a materially adverse employment action – which is a necessary element of Plaintiff's age discrimination claim. *See David,* 846 F.3d at 225; *Poullard v. McDonald,* 829 F.3d 844, 856 (7th Cir. 2016). "In a discrimination case, a materially adverse employment action is one which visits upon a plaintiff 'a significant change in employment status,'" involving "the employee's current wealth, his career prospects, or changes to work conditions that include humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in the workplace." *Boss v. Castro,* 816 F.3d 910, 917 (7th Cir. 2016 (citation omitted). "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Nagle v. Vill. of Calumet Park,* 554 F.3d 1106, 1116 (7th Cir. 2009) (citation omitted). "The idea behind requiring proof of an adverse employment action is simply that a statute which forbids *employment* discrimination is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace." *Hunt v. City of Markham, Ill.,* 219 F.3d 649, 653 (7th Cir. 2000) (emphasis in original).

It is undisputed that Plaintiff, along with other sprinkler fitters, had to "sit" for periods of time ranging from a day to several weeks when no work was available, that when Plaintiff left his employment in April 2013 Plaintiff was on a "sit," and that Plaintiff admits that FPN did not lay him off. Further, examining the facts in Plaintiff's favor, he did not contact Human Resources following his last day of work in April 2013, although he did contact his

8

superintendents to inquire about more work. His FPN superintendents responded that work was slow and one superintendent informed Plaintiff on two separate occasions that he was "try to get something" for Plaintiff. Although Plaintiff had other periods of "sitting" while employed at FPN, he felt that the April 2013 sit was different because the superintendents were not returning his calls. Undisputed evidence in the record, however, reveals that two of the superintendents replied to him via text messages and voice mails. Equally important, Plaintiff testified at his deposition that around the time he filed his EEOC Charge in May 2013, he decided that he did not want to return to work because he believed FPN would try to make a "paper trail" to fire him. Undisputed evidence in the record, however, establishes that FPN never fired Plaintiff and that FPN superintendents called Plaintiff after May 2013 to work on certain job sites.

Viewing this evidence and all reasonable inferences in his favor, Plaintiff voluntarily resigned from work because he decided not to return to work on his own volition and he admitted that FPN did not lay him off from work. "In the absence of circumstances suggesting a constructive discharge, an employee who voluntarily resigns cannot be said to have experienced an adverse employment action." *Andrews v. CBOCS West, Inc.,* 743 F.3d 230, 235 (7th Cir. 2014), *overruled on other grounds by Ortiz v. Werner Enter., Inc.,* 834 F.3d 760 (7th Cir. 2016). Here, Plaintiff does not argue that he was constructively discharged, and as discussed in detail below, he has failed to present evidence raising a disputed fact for trial that he was subject to a hostile work environment. *See Garofalo v. Vill. of Hazel Crest,* 754 F.3d 428, 437 (7th Cir. 2014) ("Constructive discharge 'is deemed to have occurred when the plaintiff shows that she was forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable.'") (citation omitted). Accordingly, Plaintiff has failed to set

9

forth evidence raising a triable issue of material fact that he suffered an adverse employment action. *See Life Plans, Inc.,* 800 F.3d at 349 ("To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial.").

Next, Plaintiff argues that because Superintendent Smith asked him how old he was at a job site in April 2013, the Court can infer that age discrimination was at play. (*See* FPN's Stmt. Fact ¶ 52.) "Remarks can raise an inference of discrimination when they are '(1) made by the decision-maker, (2) around the time of the decision, and (3) in reference to the adverse employment action.'" *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.,* 811 F.3d 866, 885 (7th Cir. 2016) (citation omitted); *see also Lane,* 835 F.3d at 698. Examining the evidence and all reasonable inferences in Plaintiff's favor, Superintendent Smith was not the "decision-maker" in relation to any adverse employment action – indeed, Smith did not mention an adverse employment action when he asked Plaintiff how old he was. As discussed, Plaintiff, himself, was the decision-maker because he decided that he did not want to return to work in May 2013 – a month after Superintendent Smith's question about Plaintiff's age. Simply put, any inference that Smith's question about Plaintiff's age supports intentional age discrimination is not reasonable, but rather speculative. *See Boss*, 816 F.3d at 916 (non-movant "not entitled to the benefit of inferences that are supported only by speculation or conjecture.").

Further, although Plaintiff argues that FPN treated similarly situated comparators more favorably, he has failed to present any evidence raising an inference of intentional age discrimination. In examining similarly situated comparators, "[t]he basic question is whether the situations are similar enough, apart from the employees' [protected class], to provide support for

10

a reasonable inference of discrimination." *Lane v. Riverview Hosp.*, 835 F.3d 691, 696 (7th Cir. 2016). "[W]hether employees are similarly situated is a "flexible, common-sense, and factual" inquiry in which courts consider "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications – provided the employer considered these latter factors in making the personnel decision." *David,* 846 F.3d at 225-26 (citation omitted). In short, "the proposed comparator must be similar enough to permit a reasonable juror to infer, in light of all the circumstances, that an impermissible animus motivated the employer's decision." *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012).

In his legal memoranda, Plaintiff argues that all of his union co-workers under the age of 40 are sufficient comparators. In his January 2017 affidavit, Plaintiff states that "All 281 Union brothers makes us all equal; so they are all comparators." (R. 98, Ex. 8, Kawczynski Aff. ¶ 16.) He further avers that "The comparators are under 40" and "All worked under 3 superintendents; all could get called by any of the 3 to get a job." (*Id*.) When asked about certain individuals under the age of 40 at his deposition, however, Plaintiff admitted that these individuals were in a different apprenticeship class year, held different titles, or had different levels of experience. (FPN's Stmt. Facts ¶¶ 65, 66.) Defendants have also presented evidence that FPN laid off numerous individuals under the age of 40, yet FPN never laid off Plaintiff. (*Id*. ¶¶ 37, 38, 64.) As the Seventh Circuit has reasoned, "[i]t's hard to make out a case for age discrimination when younger workers are also being shown the door." *Martino v. MCI Commc'ns Servs., Inc.,* 574 F.3d 447, 454 (7th Cir. 2009). In any event, based on the facts viewed in Plaintiff's favor, Plaintiff has not set forth evidence of comparators similar enough to infer that FPN's treatment

11

of him was based on Plaintiff's age. *See Lane*, 835 F.3d at 696-97; *Cung Hnin v. TOA (USA), LLC,* 751 F.3d 499, 505 (7th Cir. 2014).[2]

On a final note, Defendants hired Plaintiff when he was 45, and thus he was already in the protected age group – further weakening Plaintiff's claim of age discrimination. *See Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1147 (7th Cir. 1994) ("It seems rather suspect to claim that the company that hired him at age 47 'had suddenly developed an aversion to older people' two years later.") (citation omitted).

As the Seventh Circuit recently clarified, "[i]n adjudicating a summary judgment motion, the question remains: has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David,* 846 F.3d at 224. Under this standard, Plaintiff has failed to produce sufficient evidence to support a jury verdict that Defendants intentionally discriminated against Plaintiff based on his age – especially because Plaintiff voluntarily left his employment with FPN after he filed his EEOC Charge in May 2013. The Court therefore grants Defendants' summary judgment motion as to Plaintiff's ADEA claim.

## II. Hostile Work Environment Claim

Although the Seventh Circuit "has assumed, but never decided, that plaintiffs may bring hostile environment claims under the ADEA," *see Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d

---

[2] Plaintiff's argument that FPN let go of five employees over the age of 51 is unavailing because his deposition testimony supporting this assertion contains multiple levels of hearsay and Plaintiff does not offer any hearsay exceptions. *See Cairel v. Alderden,* 821 F.3d 823, 830 (7th Cir. 2016) ("To be considered on summary judgment, evidence must be admissible at trial."). In addition, from the context of Plaintiff's deposition testimony, it is apparent that the averments in his affidavit stating these facts are not based on Plaintiff's personal knowledge. *See, e.g., Jackson v. City of Peoria, Ill.*, 825 F.3d 328, 330 (7th Cir. 2016) ("affidavits must be based on personal knowledge, and this was double hearsay").

675, 678 (7th Cir. 2005), the Court nonetheless addresses Plaintiff's hostile work environment claim. Workplace harassment that is sufficiently severe or pervasive to alter the terms of employment is actionable as a hostile work environment claim. *See Cole v. Bd. of Trustees of N. Illinois Univ.*, 838 F.3d 888, 895 (7th Cir. 2016). More specifically, the ADEA is violated when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." *Boss,* 816 F.3d at 920 (citation omitted). "Surviving summary judgment on a hostile work environment claim requires sufficient evidence demonstrating (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Id.*; *see also Poullard,* 829 F.3d at 859. In determining whether a conduct is severe or pervasive under this standard, courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.E.2d 295 (1993). Courts consider hostile work environment claims under a "totality of the circumstances" approach. *See id.*; *Boss,* 816 F.3d at 920.

Plaintiff bases his hostile work environment claim on age-based "name calling" by his co-workers, including apprentices, journeymen, foremen, and Superintendent Smith. At his deposition, Plaintiff testified that while he was at the union apprentice school, his co-workers called him nicknames such as "apprentisaurus" and other co-workers called him "old man" and "old Jeff" in 2008. Plaintiff testified, however, that he did not complain to his instructor about

13

these comments because it was not a common occurrence. (FPN Stmt. Facts ¶ 30.) Plaintiff also asserts that in June and July 2008 his foreman referred to him as "old man" or "apprentisaurus," but that he did not experience any name calling in 2009 and that only one name calling incident occurred in 2010. Moreover, once Plaintiff became a journeyman in 2012, people stopped calling him an apprentisaurus. At his deposition, Plaintiff stated that he did not report the name calling to Local 281 while he was an apprentice nor did he complain to anyone at FPN's Human Resources Department, although in 2011, he told Jeff Smith, who was then his foreman, that he did not like being called these names. (Ex. A, Kawczynski Dep., at 147-48.) Furthermore, Plaintiff repeatedly testified at his deposition that he ignored these comments in hopes they would go away and that he always worked hard until he could get the job done. (*Id.* at 113-14, 117-18, 160, 167-68, 173-74, 189, 204-05.) Indeed, Plaintiff did not provide any specific incidences of where or how the name calling effected his ability to perform his job duties or his work performance. (FPN Stmt. Facts ¶ 56.) Instead, Plaintiff unequivocally testified that the name calling did not affect his work. (Ex. A, Kawczynski Dep., at 327-28.) In fact, throughout these proceedings, Plaintiff has consistently asserted that he was a hard worker while employed by Fire Protection and FPN and that his co-workers and supervisors thought this and often complimented his work. It is further undisputed that Plaintiff admitted that he "felt positive" about working with all of the superintendents, including Superintendent Smith. (FPN's Stmt. Facts ¶ 16.)

      Considering Plaintiff's hostile work environment claim under a "totality of the circumstances" approach and construing the evidence and all reasonable inferences in Plaintiff's favor, there is evidence that Plaintiff subjectively believed his work environment was hostile.

*See, e.g., Orton-Bell v. Indiana,* 759 F.3d 768, 775 (7th Cir. 2014). Plaintiff, for example, testified that the name calling hurt his feelings. (FPN Stmt. Facts ¶ 57.) Also, Plaintiff stated that "[e]ven though I would come home depressed after being, you know, tortured all day long from it, I'd still try to perform to my top level." (Ex. A, Kawczynski Dep., at 169.) Turning to whether Plaintiff's work environment was objectively unreasonable, Plaintiff's deposition testimony reveals that his co-workers often called each other by their nicknames, including "buckethead, "dog nuts," "pig pen," and "baby Huey." (FPN's Stmt. Facts ¶ 40, Ex. A, Kawczynski Dep., at 125-28.) These nicknames do not suggest animus against a protected class, but it is relevant to note that the culture at the various job sites involved name calling and teasing. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ("simple teasing" does not amount to changes in the "terms and conditions of employment."). As the Seventh Circuit teaches, courts "must proceed with '[c]ommon sense, and an appropriate sensitivity' to that context to distinguish between general vulgarity and discriminatory conduct or language 'which a reasonable person in the plaintiff's position would find severely hostile or abusive.'" *Passananti v. Cook Cnty.,* 689 F.3d 655, 666 (7th Cir. 2012) (citation omitted).

Indeed, the key to the Court's analysis is whether Plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. *See Harris*, 510 U.S. at 21; *Boss*, 816 F.3d at 920. Viewing the facts and reasonable inferences in Plaintiff's favor, the underlying name calling was relatively pervasive because it occurred throughout his five-year career with FPN – although there was only one incident of name calling in 2009 and 2010. That being said,

15

Plaintiff has repeatedly and unequivocally stated that this name calling did not affect his ability to perform his job duties to the best of his ability. Further, there is no evidence in the record that this conduct was physically threatening or humiliating, although Plaintiff testified that the name calling hurt his feelings and that it affected him emotionally. Nevertheless, these factors – along with the absence of admissible evidence suggesting FPN's superintendents were motivated by discriminatory animus and the fact that Plaintiff never reported the name calling to Human Resources – belie Plaintiff's argument that the name calling altered the conditions of his employment amounting to a hostile work environment. *See Boss*, 816 F.3d at 920.

Because Plaintiff has failed to set forth evidence raising a genuine dispute of material fact for trial in relation to every element essential to his hostile work environment claim, the Court grants Defendants' summary judgment motion as to this claim. *See Diedrich v. Ocwen Loan Servicing,* LLC, 839 F.3d 583, 591 (7th Cir. 2016).

## CONCLUSION

For the reasons set forth above, the Court grants Defendants' summary judgment motions and denies Plaintiff's summary judgment motion. The Court denies Defendants' motion to strike Plaintiff's expert witness as moot. The Court dismisses this lawsuit in its entirety.

**Date:** February 23, 2017

        **ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**